UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X          **Docket No.:**

JOHNNY FIGUEROA,

                          Plaintiff,

        -against-          **COMPLAINT**

THE CITY OF NEW YORK, GIOVANNI
CAGGIA, DAVID DIMITRI, MARY
PADOVANO and JOHN and JANE DOE (said          **JURY TRIAL REQUESTED**
names being fictitious, the persons intended being
those who aided and abetted the unlawful conduct
of the named Defendants),

                    Defendants.
-------------------------------------------------------X

      Plaintiff, **JOHNNY FIGUEROA**, by his attorneys, **MADUEGBUNA COOPER, LLP**,

for his complaint alleges:

      **I.**     **THE NATURE OF THIS ACTION**

      1.     This is an action for declaratory judgment and money damages to remedy

discrimination and retaliation on the basis of race, color, ancestry and national origin in the

terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"); 42 U.S.C. § 1981 as amended by the Civil

Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section 1981") and the Civil Rights Act of 1871

pursuant to 42 U.S.C. § 1983 ("Section 1983"); the New York Human Rights Law as contained

in New York State Executive Law, § 296 *et seq.* ("NYSHRL") and New York City Human

Rights Law as contained in the Administrative Code of the City of New York, § 8-107 *et seq.*

("NYCHRL").

      2.     Plaintiff contends that the terms, conditions and privileges of his employment

relationship with the CITY OF NEW YORK ("CITY") were adversely affected because of his

race, color, ancestry and national origin, and in retaliation for his complaints of discrimination.

3.      Specifically, Plaintiff contends that due to his race, color and national origin, and in retaliation for his protests of unlawful discrimination he was:

a.      given the hardest assignments that were considered the least desirable by his coworkers;

b.      denied assistance and support for his assignments;

c.      denied the use of a CITY vehicle to transport his heavy tools and equipment;

d.      denied overtime work and assignments causing him considerable monetary loss in excess of $100,000;

e.      subjected to unlawful labor practices and unsafe working conditions which caused injury to his eye; and,

f.      denied equal treatment with similarly situated employees who were not Hispanic or of Puerto Rican descent.

4.      Accordingly, this action is being brought to vindicate Plaintiff's human and civil rights under the law.

## II.      **JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

6.      This Court has supplemental jurisdiction over the state causes of action pleaded.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.      **PROCEDURAL REQUIREMENTS**

8.      After filing this action, Plaintiff will serve a copy of the complaint on the New

York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

9.      Charges of discrimination have been filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII.

10.     The EEOC issued a Right to Sue Notice to Plaintiff on September 6, 2019, which Plaintiff received on September 21, 2019.

11.     This lawsuit was filed within 90 days of Plaintiff receiving the Right to Sue Notice.

### IV.     **PARTIES**

12.     Plaintiff is a 59 year-old male of Hispanic ancestry[1] and race,[2] and is of Puerto Rican descent.[3]

13.     Plaintiff is a resident of the City and State of New York.

14.     Plaintiff has been continuously employed by the CITY since 1997.

15.     Defendant CITY is a municipal corporation existing under and by virtue of the laws of the State of New York.

16.     At all relevant times, Defendant DAVID DIMITRI ("DIMITRI") held the title of Assistant Commissioner of Facilities Operations at the Department of Citywide Administrative Services ("DCAS"), an agency of the CITY

17.     DIMITRI is a white male.

18.     At all relevant times, PADOVANO and CAGGIA reported to DIMITRI.

19.     At all relevant times, and until his demotion to Painter effective on or about

---

[1] "Based on longstanding Supreme Court and Second Circuit precedent, we reiterate that 'race' includes ethnicity for purposes of § 1981, so that discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under that statute." *Village of Freeport v. Barrella*, 814 F.3d 594, 608 (2d Cir. 2016).
[2] "Hispanics constitute a race as a matter of law, under both § 1981 and Title VII." *Id*.
[3] Puerto Rican plaintiffs can state a claim for national origin discrimination. *de la Cruz v. N.Y.C. Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996).

March 8, 2019, Defendant GIOVANNI CAGGIA ("CAGGIA") held the title of Paint Supervisor at DCAS.

20.     CAGGIA is a white male of Italian descent.

21.     At all relevant times, and until his demotion to Painter on or about March 8, 2019, CAGGIA was Plaintiff's direct supervisor at the Trade Shop located at Kent Avenue in Brooklyn ("Trade Shop").

22.     At all relevant times, CAGGIA had direct responsibility for the Trade Shop.

23.     At all relevant times, and until her retirement on or around March 8, 2019, Defendant MARY PADOVANO ("PADOVANO") held the position of Director of Shops.

24.     PADOVANO is a white female of Italian descent.

25.     PADOVANO had overall responsibility for all trade shops within DCAS, including the Trade Shop.

26.     At all relevant times, and until her retirement on or around March 8, 2019, CAGGIA reported to PADOVANO.

27.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States and the State of New York, and under the authority of their respective positions or offices.

28.     During the relevant time, each Defendant was responsible for ensuring that employees are not subjected to discriminatory and/or retaliatory practices, including retaliation for engaging in protected activity.

29.     At all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff.

- 4 -

V.     **FACTS COMMON TO ALL CAUSES OF ACTION**

*Plaintiff's Skill, Qualifications and Background:*

30.     Plaintiff is an accomplished tradesman who has worked for the CITY for over twenty-two (22) years.

31.     Plaintiff began working as a Plasterer/Painter in 1993 with the Methodist Hospital in Brooklyn where he applied plaster and paint to interior walls, calculated areas to be painted, and inspected work areas.

32.     In 1997, Plaintiff was hired by the CITY in the civil service title "Plasterer," with the CITY's New York City Housing Authority ("NYCHA").

33.     As a Plasterer, Plaintiff is responsible for applying coats of plaster to interior walls, ceilings and partitions of buildings, inspecting work areas and supervising and directing Plasterer Assistants.

34.     At NYCHA, Plaintiff efficiently completed outstanding work orders, and drove the agency's backlog down 96%, from one hundred eighty (180) work orders to seven (7).

35.     Plaintiff also served as the President of the Hispanic Society of NYCHA for twelve years, earning proclamations for his service to the community from the New York State Assembly, New York City Council, Office of the New York City Comptroller, and Manhattan Borough President.

*Plaintiff Transfers to DCAS in May 2017:*

36.     On or about May 30, 2017, Plaintiff transferred to DCAS.

37.     CAGGIA became his direct supervisor.

38.     Plaintiff began working in the Facilities Management Line of Service, which provides trade services to DCAS-managed buildings.

39.     DCAS' Facilities Management Line of Service employs tradesmen like carpenters, plumbers, electricians, locksmiths, laborers, painters, and plasterers, such as Plaintiff.

40.     Trade workers in the Facilities Management Line of Service provide in-house maintenance, repair and emergency work for DCAS systems and equipment, as well as small-scale renovations and specialty work.

41.     They repair and provide maintenance services to State Courts located within the City, as well as landmark buildings like City Hall and County and Borough halls.

42.     Plaintiff currently works out of the Trade Shop, a warehouse that stores equipment, materials, and personnel.

43.     Plaintiff is assigned to work principally in Brooklyn, but receives assignments in other boroughs as well.

44.     Plaintiff is one of three Plasterers in the Trade Shop.

45.     The other two Plasterers are Myron Baptiste, who is African-American, and Pasquale Caldarelli, who is white and of Italian descent.

46.     Of the more than one hundred (100) trade workers in the Trade Shop, fewer than ten (10) including Plaintiff, are minorities.

47.     Of twelve (12) supervisors, only one (1) is a minority.

48.     Despite Defendants' many obstacles, Plaintiff has faithfully and effectively discharged his duties at DCAS.

*Plaintiff is Discriminatorily Confronted about His DCAS Transfer:*

49.     On or about May 30, 2017, shortly after transferring to DCAS, Plaintiff was called into the office of PADOVANO, the Director of the Trade Shop, with CAGGIA present.

- 6 -

50.     Upset that another minority had been assigned to her shop, PADOVANO told Plaintiff that she had a "problem" with the way DCAS hired him.

51.     Plaintiff believed his transfer from NYCHA to DCAS complied with CITY and civil service rules and procedures.

52.     Plaintiff, confused and taken aback, suggested that PADOVANO address any "problem" she may have with Plaintiff's hiring with DCAS's human resources department.

53.     PADOVANO angrily responded, "I will, now leave my office."

*Defendants Discriminate Against Plaintiff*:

54.     Since the abrupt May 2017 meeting with PADOVANO and CAGGIA, on account of his race, color, ancestry and national origin, Plaintiff has suffered discrimination at the Trade Shop.

55.     Since then Plaintiff was required to perform, without the help of a Laborer, the most-labor intensive jobs and those considered the least desirable by other Trade Shop employees, including jobs that were long outstanding, further in distance, more difficult and required much repair work.

56.     While Trade Shop employees in non-Laborer positions, including Plasterers, Painters and Masons, are either paired up with or assigned Laborers to assist them on work sites, Plaintiff was forced to perform such jobs without a Laborer.

57.     Similarly, while other employees were assigned CITY vehicles to transport tools and equipment and travel between sites, Plaintiff was denied a vehicle.

58.     Upon his arrival at the Trade Shop, Messrs. Baptiste and Caldarelli were paired with Laborers, who transported them in CITY vehicles to work sites.

59.     Beginning on or around May 30, 2017, CAGGIA, with the agreement of PADOVANO, assigned a large number of tasks to Plaintiff to handle alone, even though non-Hispanic and non-Puerto Rican employees, including Laborers, were available in the Trade Shop with no assignment.

60.     CAGGIA, with the agreement of PADOVANO, also assigned Plaintiff large projects that he was forced to handle alone – like 137 Centre Street and 120 Schermerhorn Street – because Baptiste and Caldarelli, to the knowledge and assent of the individual defendants, refused to help.

61.     Plaintiff was not assigned a Laborer on these large projects that he worked alone.

62.     Defendants' failure to assign Plaintiff a Laborer or a vehicle was especially detrimental to Plaintiff's work. He had to single handedly transport heavy tools and equipment using mass transit, and unlike non-Hispanic and non-Puerto Rican employees in the Trade Shop, lacked assistance on his work sites.

63.     Worse, Defendants did not immediately reimburse Plaintiff for the cost of his public transportation to work sites, as is the practice. Plaintiff was forced to file a union grievance to be reimbursed.

64.     The failure to assign a Laborer to Plaintiff also impacted his ability to accept overtime assignments. He was forced to turn down any offered overtime due to CAGGIA's and PADOVANO'S refusal to provide Plaintiff a Laborer.

65.     Even when Plaintiff was assigned a Laborer, the Laborers, who were known to be close with CAGGIA, ignored Plaintiff's direct orders.

66.     When Plaintiff asked CAGGIA for a CITY vehicle, CAGGIA refused to assign one and falsely told Plaintiff that only Laborers and Masons are permitted to use CITY vehicles. Yet, the two other Plasterers used CITY vehicles.

67.     In addition, since beginning his employment with DCAS, Plaintiff had complained to CAGGIA and PADOVANO that he had not been provided proper fog-resistant safety goggles.

68.     As a result, on July 16, 2019, lime dripped into Plaintiff's eye, requiring an emergency hospital visit to have the eye flushed.

69.     Due to the eye injury, Plaintiff missed seven (7) days of work.

70.     After Plaintiff returned to work, in light of Defendants' continuing failure to provide fog-resistant goggles, Plaintiff purchased his own pair to use at work.

*Plaintiff's Coworker, Vincent Coppola, Receives Preferential Treatment:*

71.     Beginning in or around August 2017, Plaintiff became aware that his coworker, Vincent Coppola, a Cement Mason and white male of Italian descent, received from CAGGIA preferential treatment, with the agreement of PADOVANO, including job assignments and other benefits, on account of his race, color, ancestry and national origin.

72.     CAGGIA supervised both Plaintiff and Mr. Coppola.

73.     CAGGIA gave Mr. Coppola a CITY vehicle to transport his tools and travel to work sites while Plaintiff was forced to use public transit.

74.     CAGGIA also always assigned Mr. Coppola a Laborer to assist him with tasks, while Plaintiff was forced to complete the most labor-intensive jobs without assistance.

*Plaintiff Files a Discrimination Complaint with the DCAS Equal Employment Opportunity Office:*

75.     On June 11, 2018, Plaintiff, fed up with Defendants' blatant discrimination filed a complaint with the DCAS Equal Employment Opportunity ("EEO") Office.

76.     On June 26, 2018, Diversity & EEO Officer Belinda French acknowledged receipt of Plaintiff's complaint.

77.     However, violating EEO's own rules and policies, Ms. French refused to investigate Plaintiff's discrimination complaint.

*Plaintiff is Called into a Meeting with DCAS Labor Relations:*

78.     In or around September 2018, after his EEO complaint languished for over three months, Plaintiff was asked to meet with Eric Hicks, DCAS's Director of Disciplinary Proceedings, and Zaida Mulero, First Deputy Director of Labor Relations.

79.     Also in attendance were Nicole Alexander, an Investigator in Disciplinary Proceedings, and Plaintiff's union representative, Donald Arnold.

80.     During the meeting, Ms. Mulero told Plaintiff about CAGGIA's false allegation that other Trade Shop employees were not assigned Laborers.

81.     Mr. Arnold immediately called Mr. Caldarelli, who confirmed that he had a Laborer assigned to assist him on jobs, directly contradicting CAGGIA's false statement.

82.     Upon information and belief, the only investigation DCAS or Labor Relations conducted into Plaintiff's claims was to contact CAGGIA for a statement.

*Defendants Retaliated Against Plaintiff for Complaining about Unlawful Discrimination:*

83.     After Plaintiff filed his complaint with EEO, beginning in or around September 2018, CAGGIA retaliated against Plaintiff by denying him overtime.

84. Non-Hispanic and non-Puerto Rican Trade Shop employees who, upon information and belief had not complained about discrimination, including Messrs. Baptiste and Caldarelli, did not have their overtime opportunities restricted or denied.

*Plaintiff Files a Charge of Discrimination with the Equal Employment Opportunity Commission*:

85. As a result of continuing retaliation and the failure of DCAS's EEO to properly investigate his discrimination complaints, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2018.

86. Despite Plaintiff's EEOC Charge, Defendants continued to discriminate and retaliate against Plaintiff by denying him Laborers or overtime opportunities.

*Plaintiff Continues to be Denied Overtime*:

87. On January 3, 2019, Plaintiff complained directly to CAGGIA, DIMITRI and PADOVANO that he was being treated unfairly "in terms of overtime and other terms and conditions of employment."

88. Specifically, DIMITRI denied Plaintiff overtime on work sites that required scaffolding because Plaintiff did not have the proper certification.

89. Although DIMITRI offered non-scaffolding overtime opportunities exclusively to non-Hispanic and non-Puerto Rican employees, he also extended overtime opportunities on scaffolding sites to these non-Hispanic and non-Puerto Rican employees, despite these employees not being certified, who, upon information and belief, had not complained about discrimination.

90. In fact, PADOVANO admitted to Plaintiff that no employee in the Trade Shop had a license or permit to assemble or work on scaffolding.

91.     For example, on or around January 11, 2019, DIMITRI denied Plaintiff overtime, allegedly due to an issue with scaffolding safety and proper certifications at a work site at 45 Monroe Place, Brooklyn.

92.     This particular work site was surveyed by Plaintiff on or around January 4, 2019, and when he asked to begin work on the site, his requests were denied by the individual defendants.

93.     Instead, Messrs. Baptiste and Caldarelli, who are not Hispanic or of Puerto Rican descent and, upon information and belief, had never complained about discrimination, were granted overtime on the same work site for January 12 and 13, 2019, and were provided Laborers.

94.     DIMITRI ignored Plaintiff's multiple complaints of discrimination and retaliation, and referred Plaintiff to Mr. Hicks.

*Plaintiff Complains to DCAS Director of Disciplinary Proceedings Eric Hicks about DIMITRI's Discrimination and Retaliation:*

95.     Beginning on or around January 4, 2019, Plaintiff sent a series of emails to DCAS Director of Disciplinary Proceedings Mr. Hicks, complaining about the "deliberate, dangerous and retaliatory adverse employment actions against [him] based on [his] race, national origin, ethnicity…," including the denial of overtime by DIMITRI and PADOVANO and refusal to assign Laborers to assist Plaintiff.

96.     On January 15, 2019, Plaintiff complained a final time to DMITRI and PADOVANO, as well as Mr. Hicks, about the denial of overtime, and also complained that "similarly situated employees [are] treated differently only because of discrimination and retaliation."

97.     Mr. Hicks directed Plaintiff to raise his complaints with the EEO Office. Although Plaintiff included the EEO Office, including Ms. French, on a follow-up email concerning his complaints, no efforts were made to further investigate.

*CAGGIA is Demoted and PADOVANO Retires:*

98.     On or around March 8, 2019, CAGGIA was demoted to Painter and PADOVANO retired from CITY employment.

99.     Upon information and belief, CAGGIA was demoted in part due to Plaintiff's complaints of discrimination and retaliation.

100.    After CAGGIA's demotion, Plaintiff came under the direct supervision of Supervisor Bricklayer Steven Delea.

101.    Since being supervised by Mr. Delea, Plaintiff has been assigned a Laborer who is able to transport him to work sites in a CITY vehicle.

*The EEOC Issues a Determination in Plaintiff's Favor:*

102.    On April 10, 2019, shortly after CAGGIA's demotion and PADOVANO's retirement, EEOC District Director Kevin Berry issued a Determination in Plaintiff's favor, and noted in his decision that:

> We received evidence that questions the accuracy of some of Respondent's statements. Witness testimony and documentary evidence support Charging Party's ["CP"] allegations that his supervisor Giovanni Caggia regularly paired the Messrs. Baptiste and Caldarelli or provided them with a laborer, while CP routinely was scheduled to work alone. In addition, in retaliation for complaining about discrimination, Respondent denied CP overtime.

103.    The EEOC further found that:

> Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party

based on his national origin, color and retaliated against Charging
Party for engaging in protected activity.

104.    Despite the EEOC's finding, Defendants refused to resolve this matter with the

EEOC, forcing Plaintiff to bring the instant action.

105.    As a proximate result of Defendants' discriminatory conduct towards Plaintiff,

Plaintiff has suffered and continues to suffer significant monetary loss and damages, including

the loss of past and future earnings, and other employment benefits.

106.    As a further proximate result of Defendants' actions, Plaintiff has sought the care

of physicians due to elevated stress levels, severe emotional distress, lasting embarrassment,

humiliation and anguish, as well as other incidental and consequential damages and expenses.

107.    Defendants' conduct was outrageous and malicious, intended to injure Plaintiff,

and carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling

him to punitive damages.

108.    Plaintiff has no complete, plain, clear or adequate remedy at law.

109.    Defendants' acts against Plaintiff continue. Defendants must be restrained from

further discrimination against Plaintiff and directed to cease and desist from their unlawful acts

against Plaintiff.

110.    Plaintiff believes Defendants' unlawful acts against him will continue until this

Court, by injunction and/or its judgment, compels otherwise.

## FIRST COUNT AGAINST DEFENDANT CITY
### (Discrimination in Violation of Title VII)

111.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

112.    Defendants subjected Plaintiff to differential terms and conditions of employment

because of his race, color and national origin, including, but are not limited to:

- 14 -

a.      Assigning Plaintiff, without a Laborer, the most-labor intensive jobs and jobs that were considered the least desirable by other Trade Shop employees, including jobs that were long outstanding, further in distance, more difficult, and required much repair work;

b.      Denying Plaintiff a Laborer;

c.      Denying Plaintiff a vehicle; and,

d.      Denying Plaintiff overtime.

113.    All the foregoing actions were taken by the CITY in order to deprive Plaintiff of employment and other contractual opportunities on account of his race, color and national origin.

114.    Because of the willful and deliberate actions of Defendants, and as a proximate cause thereof, Plaintiff has been denied his right to equal employment opportunity in violation of Title VII.

115.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### SECOND COUNT AGAINST DEFENDANT CITY
#### (Retaliation under Title VII)

116.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

117.    Defendant CITY's conduct was retaliation for Plaintiff's complaints of discrimination on the basis of race, color and national origin, and violated Plaintiff's rights under Title VII.

118.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**THIRD COUNT AGAINST DIMITRI, CAGGIA and PADOVANO**
**(Race Discrimination under Sections 1981 and 1983)**

119.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

120.    Defendants subjected Plaintiff to differential terms and conditions of employment because of his race.

121.    Specifically, since 2017 Plaintiff was, *inter alia*, subjected to incessant harassment not experienced by similarly situated non-Hispanic and non-Puerto Rican employees, denial of assistance from Laborers and denial of overtime.

122.    Defendants took the foregoing actions to deprive Plaintiff of equal employment opportunities and other contractual opportunities on account of his race.

123.    Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been denied his right to equal employment opportunity in violation of Sections 1981 and 1983.

124.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FOURTH COUNT AGAINST DIMITRI, CAGGIA and PADOVANO**
**(Retaliation under Sections 1981 and 1983)**

125.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

126.    Defendants' conduct was retaliation for Plaintiff's complaints of discrimination on the basis of race and color, and violated Plaintiff's rights under Sections 1981 and 1983.

127.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FIFTH COUNT AGAINST ALL DEFENDANTS**
**(Race, Color, Ancestry and National Origin Discrimination**
**in Violation of the NYSHRL)**

128.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

129.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL.

130.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his race, color, ancestry and national origin, Defendants violated the NYSHRL.

131.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SIXTH COUNT AGAINST ALL DEFENDANTS**
**(Race, Color, Ancestry and National Origin Discrimination**
**in Violation of the NYCHRL)**

132.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

133.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

134.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his race, color, ancestry and national origin, Defendants violated the NYCHRL.

135.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SEVENTH COUNT AGAINST ALL DEFENDANTS**
**(Retaliation in Violation of NYCHRL and NYSHRL)**

136.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

137.    All the various actions Defendants took against Plaintiff subsequent to when he

complained of discrimination constitute unlawful retaliation in violation of the NYSHRL and NYCHRL.

138.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## VICARIOUS LIABILITY

139.    At all relevant times, the CITY is vicariously liable for the actions of the individual Defendants.

## PUNITIVE DAMAGES

140.    Plaintiff claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the individual Defendants herein-above alleged.

**WHEREFORE,** Plaintiff prays that this Court grant him judgment containing the following relief:

a.    Impanel a jury to hear Plaintiff's claims;

b.    An award of damages in an amount to be determined at the trial to compensate Plaintiff for his monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

c.    An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

d.    An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for violations of his rights under Title VII, Sections 1981 and 1983, the NYSHRL and the NYCHRL;

e.    An award of punitive damages to be determined at the time of trial for the claims under Title VII, Sections 1981 and 1983, the NYSHRL and the NYCHRL;

f.   An award of reasonable attorneys' fees and costs related to Plaintiff's claims under Title VII, Sections 1981 and 1983, the NYSHRL and the NYCHRL and;

g.   Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 5, 2019

Respectfully Submitted,

SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff,
JOHNNY FIGUEROA
30 Wall Street, 8th Floor
New York, New York 10005
(212) 232-0155

TO:   THE CITY OF NEW YORK
      c/o Corporation Counsel
      Law Department
      100 Church Street
      New York, New York 10007

      GIOVANNI CAGGIA
      c/o Department of Citywide Administrative Services
      390 Kent Avenue
      Brooklyn, New York 11249

      DAVID DIMITRI
      c/o Department of Citywide Administrative Services
      1 Centre Street
      New York, New York 10007

      MARY PADOVANO
      28 Memo Street
      Staten Island, New York 10309

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*

-------------------------------------------------------------------------------------------------------------------------------
*JOHNNY FIGUEROA,*

*Plaintiff,*

*-against-*

*THE CITY OF NEW YORK, GIOVANNI CAGGIA, DAVID DIMITRI, MARY PADOVANO and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

*Defendants.*
-------------------------------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*

_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8ᵗʰ Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*
_____

*Attorneys for*

- 20 -